(No. 14931.—Judgment affirmed.)
CHARLES SAMUELSON, Appellant, *vs.* THE ROCKFORD
CHAMBER OF COMMERCE *et al.* Appellees.

*Opinion filed December 19, 1922.*

CONTRACTS—*when alleged contract and lease are not sufficient to support suit in assumpsit.* Where a municipal chamber of commerce, as an inducement to land owners to rent their farms to the government for an army cantonment, by written instrument pledges a certain sum toward a fund from which damages to crops are to be paid, a land owner cannot maintain an action of assumpsit on said written instrument *where it was not signed by him* but was merely handed to him with his lease, and where there are no allegations in the declaration showing that the fund was sufficient to pay the damages in full or showing what proportion of their damages the various land owners were entitled to collect.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. EDWARD D. SHURTLEFF, Judge, presiding.

ROY F. HALL, and J. E. GOEMBEL, for appellant.

FISHER, NORTH, WELSH & LINSCOTT, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles Samuelson brought an action of assumpsit in the circuit court of Winnebago county against the Rockford Chamber of Commerce by that name, and thirteen individuals. He recovered a judgment for $75, and being dissatisfied with the amount appealed to the Appellate Court for the Second District, where the judgment was affirmed. A certificate of importance was granted and the plaintiff appealed to this court.

The declaration stated that the plaintiff on June 30, 1917, was the owner of 192 acres of land in Winnebago county, and on that date, at the request of the defendants, executed a lease to Charles A. Dickinson, trustee, for the

term of one year, and from year to year thereafter for a period of five years, with the right in the trustee or his assignee to terminate the lease on the first day of March of any year by giving notice before the first day of July in the preceding year. The property was to be used only for a training camp or cantonment purposes, with the right to the lessee or his assignee to remove all improvements from the premises, to build roads and to place equipment deemed necessary by the government for the maintenance of a cantonment site, with the right to remove buildings, etc., at the end of the lease. An annual rent was to be paid of $20 per acre, payable semi-annually, beginning January 1, 1918, and every six months thereafter, ("$5 per acre per year for the first year shall be deducted from said first year's rent and placed in the hands of H. S. Burpee, trustee, and applied to crop damages as per separate contract with the Rockford Chamber of Commerce,") the rent to be considered as beginning March 1, 1917, and the rental year to terminate March 1 in each year. The right was given to the lessee to terminate on March 1 or June 30 of any year, but if terminated on June 30, rent should be payable for the full year until the first of March. All of the premises not used and all buildings not occupied by the United States government or the War Department were reserved until the growing crops thereon at the time the lease was executed were cut and harvested, and upon the harvesting of such crops, and thereafter during the term of the lease, the trustee or his assignee was to have the right to the exclusive use of all buildings on the premises. Possession was to be given upon the demand of the trustee or his assignee, the buildings were to be left in as good condition as they were at the beginning of the lease, ordinary wear and tear excepted, every building wrecked or removed to be paid for at its fair cash market value. If the term of the lease lasted for more than a year the government agreed to pay $35,000 to the owners of the respective tracts in proportion that the

damage to each tract bears to the whole tract used by the cantonment. It is then averred that the Rockford Chamber of Commerce entered into an agreement which is set out in full in the declaration, as follows:

"In consideration of the Rockford Chamber of Commerce of Rockford, Illinois, subscribing and paying the sum of $25,000 for damages to the crops of the undersigned, the undersigned hereby agrees to rent their respective tracts of land as provided in the lease, subject to certain changes required by them, to the United States government for the sum of $15 per acre the first year and $20 the following year; $5 deducted from the rent the first year are to be applied for damages to the crops in connection with the $25,000. Changes above mentioned to be made in the lease are that the owners of the farms are to get rent from March 1, 1917, and notice of termination of the tenancy of any year is to be given them the first day of July preceding the first day of March of the year the tenancy is to be ended.      (Farmers' signatures.)

"The Chamber of Commerce hereby agrees to pay the sum of $25,000 in accordance with the above agreement.

"Signed by Rockford Chamber of Commerce, by John H. Camlin, President, and by the names of all other defendants."

There were no farmer signatures attached at the place indicated for that purpose or elsewhere.

It is averred that the person signing this document signed it as and for the "Rockford Chamber of Commerce;" "that it was agreed by the said persons as, for and being the Rockford Chamber of Commerce to pay the plaintiff whatever crop damage he should suffer on account of said crops being destroyed because of the use of the premises by the government of the United States as an army training camp;" that the government took possession of the premises and used them as a training camp and destroyed the crops on the premises so that they were lost to the plaintiff; that the defendants constituted H. S. Burpee trustee for them and caused to be paid to said Burpee $5 an acre, which was deducted from the rent of the plaintiff and from the rent of the land of a number of other owners in the vicinity, and paid, or ought to have paid according to their agreement, to Burpee, $25,000 mentioned

in the agreement to be used for the payment of damages to crops destroyed on the land of the plaintiff; that the defendants composing the Rockford Chamber of Commerce had in their possession or under their control the $25,000 and a large amount of the crop-damage fund collected from the plaintiff and other owners in the vicinity with whom like contracts were made, and that the damage to the crops that were growing on the premises at the time the United States government took possession amounted to $3520, which the plaintiff requested the defendants to pay but they had neglected to do so.

The defendants filed the plea of the general issue. The cause was tried by a jury, and at the conclusion of the plaintiff's evidence the defendants requested the court to instruct the jury to return a verdict for the defendants, but the court denied the motion. The plaintiff then asked leave of the court to introduce further testimony, and, as it was within a few minutes of the customary hour for the adjournment of court for the day, to postpone the trial until the next morning, but this motion was denied by the court. The defendants then made a motion to strike out all the evidence pertaining to damages to the corn, the potatoes and the timothy pasture, and the court sustained the motion. The plaintiff then, by way of cross-motion, renewed the motion which he had made to introduce further evidence, and the court again overruled the motion. The court of its own motion then instructed the jury that in case they should find for the plaintiff the damages should be fixed only as to the three acres of land in question, which were sowed to alsike, clover and timothy, and should not exceed in any event the sum of $75. The jury retired and returned into court a verdict for the plaintiff assessing the damages at $75, and the court, after overruling a motion for a new trial, rendered judgment on the verdict.

The appellant contends that there was a contract between him and the defendants the legal effect of which was

a combination of the two instruments described in the declaration and introduced in evidence, and that the terms of the contract were that the appellant should contribute $5 per acre from the rent of his land for the first year to a fund to which other land owners contributed, to be paid to H. S. Burpee, trustee, to which the Rockford Chamber of Commerce would contribute $25,000, and that the Chamber of Commerce and the other defendants who signed the instrument referred to in the lease would cause the damages suffered by the appellant on account of his crops which were sowed at the time the lease was actually signed, to be paid from such fund. He says that the trial court held in accordance with this view but the Appellate Court decided the contrary. The Appellate Court did hold that the document in regard to the fund for crop damages was not evidence of a contract between the plaintiff and the defendants and could not be made the basis of a recovery. Whatever may have been the view taken by the trial court, if there was no contract between the plaintiff and the defendants for the payment of damages to the plaintiff's crops there could be no recovery. It appears from the evidence that the plaintiff had executed a previous lease to Charles A. Dickinson as trustee, dated June 22, 1917, for a similar purpose and in terms similar though not precisely the same, the rent reserved being $25 per acre instead of $20, and no provision being made for the retention of $5 an acre for the first year for crop damages. The agreement in regard to crop damages, as has been seen, was dated June 23, 1917. The first lease, dated June 22, was canceled at the time the second was executed. This later lease, though dated June 30, was not executed until September 4 or 5, and at the same time it was executed the paper in regard to the crop-damage fund was handed to the plaintiff folded up with the lease. The declaration states that this paper referring to the crop-damage fund was the agreement referred to in the lease and became a part of the terms of the lease. If the crop-damage

agreement be regarded as written into the lease it imposes no liability on the part of the defendants to the plaintiff. The lease provides for the deduction of $5 per acre for the first year, to be placed in the hands of H. S. Burpee, trustee, and applied to crop damage as per separate contract with the Rockford Chamber of Commerce.    Referring to that contract, it provides for the payment by the Chamber of Commerce of $25,000 for damages to the crops of the undersigned.    The only names signed to the paper folded up with the copy of the lease and given to the plaintiff at the time of the execution of the lease and introduced in evidence were the names of the defendants.    If any farmer or any land owner or any lessor signed the agreement it does not appear in the evidence.    It does appear that the plaintiff did not sign it.    The agreement provided that certain changes were to be made in the lease, but those changes were not applicable to the plaintiff's lease.    His lease as written conformed to the proposed changes.    It may be that the plaintiff had executed his lease for $25 per acre rent before the proposal for the crop-damage agreement had been made and that afterward his lease was canceled and a new one executed conforming to the changed terms, and that it was expected that he would sign the crop-damage agreement and be entitled to pay from the fund which it provided for damages to his crops which he might sustain, but he did not sign the agreement, and according to its plain terms he was not entitled to the benefit of its provisions, which were limited to the signers.    Moreover, if he had signed the agreement there was no absolute promise to pay him his damages.    The agreement was for a fund of $25,000, together with $5 an acre to be deducted from the first year's rent of the land of the signers of the agreement, for damages to the crops of the signers.    Each one of the signers would have an equal claim on the fund for the amount of his damages, and no one of them would have a right to collect his damages independent of the damages

which might be due the other signers, perhaps to the latter's detriment. There are no allegations in the declaration showing that the amount of the fund was sufficient to pay the damages in full or showing what proportion of their damages the signers of the instrument were entitled to collect. If it was the intention of the parties that the plaintiff should sign the contract and sign the crop agreement and its execution was omitted by accident or mistake, so that the documents did not actually represent the contract between the parties, the appellant has no remedy at law but must seek it in another form.

The judgment is affirmed.            *Judgment affirmed.*

---

(No. 14900.—Reversed and remanded.)
THE CITY OF ALTON, Appellee, *vs.* OTTO ROLLER *et al.*
Appellants.

*Opinion filed December 19, 1922.*